Our third and final case is United States v. Ferguson, 23-4347. Mr. Lorello. Thank you, sir. May it please the court, Chief Justice Diaz and your honors, we are here today on behalf of Mr. Ferguson asking the court to overturn his conviction by finding that the trial court erred by abusing its discretion in allowing the entirety of a recorded forensic interview to be submitted to the jury as a prior consistent statement and that such error was not harmless because that particular forensic interview, the entire recording of it, was not a prior consistent statement. There were portions within that recorded interview which were entirely new and which were designed in order to build up the rapport and the credibility of the witness and these were not statements that the witness had not previously. Can I just ask you the question that sort of leapt into my head when I watched the first, say, seven minutes of this video? I'm not sure what, if any, statements by either the child or the interviewer in the entire first seven minutes of this video are even plausibly being offered to prove the truth of the matter asserted. I don't think that they necessarily were one way. Well, then they're not hearsay. Well, then they're not relevant, though. You didn't tell us that the district court abused its discretion by concluding it was irrelevant. You said the district court abused its discretion by concluding it wasn't hearsay. I think that the fact that the entirety of the interview, though, was admitted was the initial issue with the court, though, and that we did argue that the Was the entirety admitted? I thought the court got rid of a portion of it. There was a portion which was redacted which dealt with an additional victim or an additional allegation which was It's not, you keep saying the entire, I mean, I just think it wasn't the entirety. The district court actually sort of seemed to carefully go through this and sort of decide, yes, this, not that. Yes, sir. And to be clear, if I ever refer to it as an entirety, I am referring to the entire recording with that particular portion having been redacted as well. Our objection to it was that not only just the initial seven or nine minutes of it, which your honor stated in regards to that report building, but there are additional portions within the remaining 30 minutes of the interview, which were also not prior consistent statements. There were portions where the child is talking about things that about her household, her family, her relationships. Why are any of those being offered to prove the truth of the matter asserted? I think that just by being able to present them to the jury, it put the jury. You're yadda yadda yadda, literally the definition of hearsay. Hearsay is an out of court statement offered to prove the truth of the matter asserted, which means any statement that is not being offered to prove the truth of the matter asserted is literally not hearsay. The issue though was that I can see that there are certain portions within there which were probably not. Let me flip this around. Can you identify one statement in this that is actually being offered to prove the truth of the matter asserted? In regards to the portions which we had objected to? Yes. I think that... What's the strongest one of these statements that's being offered to prove the truth of the matter asserted in the statement? I unfortunately, I don't think I can identify one particular ones within there. I think the larger objection was to the entirety of the interview, not solely on hearsay grounds, but also on relevance grounds. I think that when you're introducing a recorded statement such as that, you're putting the jury in a position where they're being allowed to repeat and rehear the testimony of the jury over and over and over again. But that's a 401, 403 objection, not an 803, not an 801 objection. Yes, sir. Okay. The larger issue was that when those statements were being able to be introduced... Do you think that a forensic interviewer, when testifying, can describe the process of a forensic interview? In other words, I conducted the forensic interview and here's the process by which forensic interviews are conducted? I think that they can. I think the purpose of... And they can because that's relevant to the jury, right? It's relevant in terms of describing to the jury what is a forensic interview because a forensic interview is, of course, a technical term and a juror needs to be able to understand what a forensic interview is. And that includes... So help me understand just on the relevance point. So if they can describe it because we all agree that that's relevant, why wouldn't it be relevant to actually see the process, right? Hey, here's my little intro, here are the rules, right? Now how about describe for me something that's totally irrelevant just to show that you can remember facts and you can describe things. And then let me ask you the things that matter about abuse. Yes, sir. Because there's a difference between the witness who conducted the forensic interview describing the process, describing what a forensic interview is, describing the protocol that they're using in order to conduct the interview, and then subsequently admitting the entirety of that. And what is the difference between those two? It's that the video is just more powerful? It is more powerful. Particularly when it's video recorded and it's allowed to be introduced to the jury. The example that I would give the court is whether you're... Is there any other difference other than it just being more impactful? It's incredibly persuasive to a jury to be able to allow a witness rather on... Anything else? Because all of those seem to go to a question of 403 balancing, which I totally get, right? But they don't go to a 401 relevance standard, right? We're seeming to agree it's relevant. Maybe it's improper under 403 and we could have that debate, but it seems obvious to me that it's relevant. There might be a 403 balancing inquiry because it is powerful and persuasive, or maybe it is. I'm not sure how powerful and persuasive the first eight minutes here were. But that's a 403 question, not a 401 question and not a 801 question. I would agree that it's relevant for the witness, just to make sure that I'm fully understanding your Honor's statement. It's relevant in the sense that the witness can testify about what the process is, why they do it, why they ask those types of questions. What's not relevant and what should not be admissible is the actual statements itself. The example that I would give the court is whether you're a prosecutor or a defense attorney, if you're putting on a witness, whether a criminal case or a civil case, you're going to want to have the opportunity to have that witness ingratiate himself with the jury by talking about his background, his life, what they've done for a living, their history, things like that. That's objectionable, and that's not something that's allowed to be introduced because it bolsters the credibility of the witness before they ever begin to testify. I'm sorry. You're not allowed to introduce a witness? You're allowed to ask some very basic questions. What do you do for a living? Are you married? How old are you? Things like that. But you certainly can't go on for eight, nine, ten, fifteen, twenty minutes having them go on about who they are as a person, things that are not relevant. You can't do that because you think it's not relevant, or you think that's just within the trial court's discretion to move things along. If it's not relevant, you can't ask about it at all. That means that the person has to get up there, and maybe they get to say, do they get to say their name? They get to say their name. And then what about where they work? They get to say those types of things. Why? In many cases, I struggle to see, if we're defining relevance at all strictly, in many cases, I don't see any relevance whatsoever to the witness's job. Like if we're going to apply a real strict definition of relevance, most witnesses, I don't know why I care what your job is. I think in practice, if the other side were to stand up and object to that and make a relevance objection, it likely should be sustained. It's really not. I thought you were going to say, in practice, it would almost certainly be overruled. Right. Of course it would be, because part of what is relevant is a jury's ability to evaluate the credibility of the witness. Yes, sir. Right? It's the reason that the witness takes the oath in front of the jury. Yes, sir. We could do that outside the courtroom, right? But we have the witness take the oath in front of the jury. Yes, sir. Right? We have them introduce themselves, because part of the jury's job is to evaluate their credibility. And, yes, you can go too far on it, but I would have thought that it's well accepted that to evaluate a witness's credibility, you get the opportunity to introduce them in some degree to the jury. You do to a very limited degree. And when I said that it should be sustained, I think, granted, in practice, it would never be sustained. I think the court would allow those types of questions to ask a witness what their job is, how old they are, things of that nature. I don't think a court would allow the witness to testify at length, 5, 10, 15, 20 minutes, about their interests, their background, what they like to do. Things that would necessarily make a jury like them more, that would be bolstering the witness. And in this particular case, not only was it introduced to the jury through the video, but then the video was admitted to the jury. And so the jury was allowed to go back in the jury room and watch it over and over and over again, how many times, we don't know. But what that does is it allows the jury to improperly focus more and more on the rapport building and the credibility when that should not have been admitted in the first place. I have a couple questions about preservation along those lines. Did you ever object? So you just distinguished between showing the video to the jury and giving the video to the jury. Did you ever object to that? I think it was preserved by our general objection to the admission of it in the first place. Whether it's shown to the jury once. Oh, well, that was different. You could say judge, I mean, you could say judge, I don't think the jury should see this at all. But if you disagree with us about that, you should not let them bring it back to the, you should not let them have that. I mean, those strike me as separate objections. Respectfully, your honor, I think that it was preserved by the objection to it being introduced. And that was our objection. And I want to ask you this on your main argument in case you need to come back to it. I definitely get that you objected to the, what I'll call the courier stuff, as 403. You definitely made a 403 objection to that, but that's the part that, as Judge Richardson pointed out, the trial court excluded. Could you give me what your best record cite for the proposition that you preserved a 401-403 objection to the portions of the video other than the stuff that the district court excluded? In regards to- 401-403. Not a hearsay objection, a 401-403 objection. Judge, I think that the language of our objection, and if you recall from the joint appendix, I believe it's on page 261, that the language of our objection talked about all of those particular issues. Now, I don't recall specifically whether or not it was specifically addressed as a relevance objection or a 401 objection, but what we did- But it was made as not a hearsay objection. I think when you look through the language of our objection in the joint appendix, I think it's very clear that that was an issue that was being presented to the court, and that was something that he was deciding on as well, because our objection was that the prior statements about the rapport building and things of that nature were not something that the jury needed to decide, or not something that was relevant for them to be able to consider for those reasons, because it was not a prior consistent statement. It was rapport building, and rapport building was not relevant. That was something that was utilized in order to bolster the credibility of the witness. But I thought you said earlier that some rapport building is relevant. I think that what is relevant is some rapport building from the witness on the actual witness stand, not being introduced as a prior consistent statement, which was the rationale and the basis offered by the government in order to introduce that video in the first place. So you can have a- But you agree that the forensic interviewer can describe all of that? Yes, absolutely. That the forensic interviewer can describe the protocol of which she uses in order to- Help me, just help me understand. If it's relevant there, why is it relevant to hear about it secondhand, but not relevant to hear about it in firsthand? Because the difference would be the same as a detective explaining to the jury how it is they go about building rapport in an interrogation technique, the types of questions that they would ask in order to develop that relationship with a suspect. They're able to talk about the protocol and what they've been trained to do and how they're- And if the defendant thought he was manipulated, right, he might want to show that, right?  But it would be relevant. I totally get the rest of the stuff. But it still would be relevant if you think that that rapport building was improper in some way or dishonest, right? The defendant might want to show that because a reasonable fact finder would want to see how that process began. Correct. But the problem in this particular case is that it was offered and it was introduced as a prior consistent statement. And it was not a prior consistent statement. It was included as part of that, and the government, I think, was very candid- Well, hold on. You agreed that some of it was introduced as a prior consistency. Yes. No, you're not, but at least a portion of this interview was unquestionably introduced as a prior consistency. Absolutely. I think there are certainly, there are clearly portions within the- When the victim is describing the stuff that she testified to in her own testimony and the defense argued she was not being truthful, and then we introduce a previous statement of the victim recounting the same events, that's a prior consistent statement, right? Correct. And if your honors review the cross-examination of Jane Doe in this particular case, I don't believe we actually even impeached her at any point with prior inconsistent statements. And so we- No, but the whole defense was she's-  Lying or mistaken. And we conceded to Chief Judge Davis that there were portions which would be admissible as a prior consistent statement. Can you just give me your take on what consistent means? I mean, we've said consistent with means this idea of congruity or compatibility, right? The sort of, it's a general consistency. And so that suggests that you can gap fill and it doesn't have to be exactly what was said, right? Consistent with is broader than was repeated on the stand, right? But do you have a sense of how you would draw this line of what is a consistent statement as opposed to an inconsistent statement? Those seem like just the two sides of the coin here, but where you think that line is? Well, it's going to be a blurry line. No question about that. But I think the best way to describe it is whether or not there was ever any actual testimony on the witness stand, which is in any way related to what is also being introduced as a quote unquote prior consistent statement. I think one way that the Supreme Court of the United States described it in Williamson, which is the supplemental authority, which we presented in regards to the rule against or the statements against penal interest was whether or not the statements are collateral or not. And I think that's one way to look at it. Many of the statements of Jane Doe in the recorded forensic interview were entirely collateral to what was being offered and what was being presented as a prior consistent statement. Maybe, but the other way of thinking about them is they're not collateral at all because the question here is fundamentally her credibility. And if we're evaluating her credibility, you know, we had the forensic interviewer that talked about why this part of the interview is important for the interviewer to evaluate her credibility. Right. So we've got evidence here that these types of information is like highly relevant to a witness's credibility. And the whole reason that this is going in is because the credibility is what is at issue. Yes, sir. May I answer your question? Please. I think what's important is that the rule allowing the introduction of a prior consistent statement was not fashioned so broadly as just to say prior statements which support the credibility of a witness shall be introduced. It specifically allows for prior consistent statements. And so while if there are other statements within that particular interview which might go towards her credibility or might go towards whether or not she's being truthful or not, because they are not prior consistent statements, they should not have been introduced. Thank you. Thank you, counsel. Ms. Usyk. Thank you. Good morning, your honors. May it please the court. I'm Elizabeth Usyk for the government. How the government has read the argument, at least in the lower court and especially in the appellant's brief, is that this is a 403 argument about whether or not the omission of these were unduly prejudicial. And as this court is aware, the Fourth Circuit gives a wide discretion to lower courts in what they can admit as, in this case, a prior consistent statement. And we believe that it was entirely proper under 401, 403, and 801, which was what the court was considering as well, that it did make a 403 assessment of this. It was not our... Can I speak to just what strikes me as the most genuinely perplexing question of the hearsay issue? I really expected that when I opened up the government's brief, I was going to see an argument that the vast majority of the statements to which he objects were obviously not being offered to prove the truth of the matter asserted, and thus don't meet the definition of hearsay in the first place. I don't see that argument anywhere in the government's brief, and I don't know what I'm supposed to do with that. Your Honor, I think, in general, whether we stated it explicitly or not, it's going to... No, your whole argument is that these are prior consistent statements, which is part of the... There's this weird thing about the Federal Rules of Evidence. They define hearsay, we've repeated the definition, and then they just declare that certain things that obviously meet that definition are not hearsay, notwithstanding the fact that they obviously do. But at least it strikes me those are different arguments. This does not meet the definition of hearsay set out in 801A. Strikes me as different from an argument that it does meet the definition of hearsay set out in 801A, but it is then excluded by the carve-outs under 801D and the other provisions that do that. Those strike me as different arguments. And I think they are. Your Honor, I agree with you, and I do not think... I think that the rapport building that is being objected to here, it was all contextual. So in terms of whether what was going to be a prior consistent statement, we were focused on what she actually said about what she testified to, what Jane Doe testified to, in the court. And so the seven minutes or the nine minutes of the 45-minute interview, it was all context, and that, as this court... His question is, I think, a little different, which is, why did the government not argue before us or before the district court that at least large portions, if not all of that, is not hearsay because it's not being offered for the truth of the matter asserted? If you do a hearsay case, we start with the premise that it has to fall within the bucket that out-of-court statement offered for the truth of the matter asserted. And then if so, we have a number of what we'll broadly call exceptions. Some of them are technical exceptions. Some of them are just nominal exceptions. And that legal predicate was not the argument that you made in the district court and you not made here. And so the question is, what do we do with that? Is that a forfeiture on behalf of the government such that we have to assume that these were offered for the truth of the matter asserted? What are we supposed to do given the government failed to make what strikes me as the most obviously correct argument? Your Honor, I don't think that we forfeited it. I think that we were talking around it and talking about it within that there was such a non-issue in terms of what she likes for cereal, what's her dog's name, that sort of thing. It was so obvious that we were not giving that as anything for the truth of the matter, whether or not we said it, that it was not hearsay, that that was on us. However, how we talked about it, it was a non-issue. And it was so obvious that these things were not part of the elements of the crimes. These were not part of the crux of the evidence that we were presenting to the judge and to the jury that it never came up as, of course, it was just an obvious thing, Your Honors. And as what we did and as the court pointed out, we did bring in why there's no confusion as to the jury as to why they're seeing this rapport building because the agent, the forensic interviewer, explained why they're doing this. And it's all about whether or not we were allowed to rehabilitate this child's credibility using a prior consistent statement. And this, as a forensic interview, the entire statement, it is important, other than what we excise and we agree that that was not relevant and unduly prejudicial, but it is a statement in its entirety. Do you think it's different because it's a kid? So in other words, do you think if we had such an interview that was not from a child, is its relevance different there, or do you think that that would merely go to sort of the 403 balancing, that we might think an adult in this situation, this type of rapport building and sort of intro might still be relevant, but maybe the 403 analysis looks different? I think that a court, in every trial situation, that they're evaluating each witness individually. And a child that's a witness is going to be evaluated as a child as part of, as their innate characteristics. And a court's generally going to allow, whether you're an adult or a child, these introductory witnesses. If you have a very nervous witness, even if it was an adult, the court's going to give you more leeway in getting them comfortable or able to answer questions verbally and that sort of thing. And why do you think, so we talked to your colleague a little bit about this, why do you think the intro, every witness I've ever seen put on, they spend a couple minutes, and the judge will occasionally look at you if you go too long, but you spend a couple minutes sort of introducing the person. Why do you think that's appropriate under Rule 401? Why is it relevant? I think it's relevant to whether or not this person is able to speak in English and understand the language and understand your questions, and it's all about the credibility. It is relevant to the credibility of this witness. Are they educated? Are they highly educated? Do they have issues in school? Do they have memory issues? You can get into some pretty big issues just as rapport building slash this is who you're going to be hearing from, jury. This is the person that you're going to have to make a credibility determination from. And so I do think it's highly relevant in terms of that, whether or not the actual words have anything to do with your elements that you're proving in that case. So you think, in your view, when the trial court judge says, that's enough, counsel, let's get to it, that's sort of an effect of 403 analysis. You've done enough of this. We've introduced enough of this witness. It's time to move on. That's effectively sort of implicit 403 judgment? Absolutely, Your Honor, that you're going into. It's 403. It's also 401. All right, we've established this person understands your questions. We've established they understand right from wrong, or whatever the situation is cognitively. And let's go on to the meat of the matter. So it's efficiency, it's relevance, it's prejudice, it's everything that the court does when they're controlling a trial. And Your Honors, I do want to address the harmlessness error while it was only mentioned briefly, I think, in the last sentence of the appellant saying that this was not harmless without any explanation. And there was no reply brief, so I'm not sure what their argument will be about harmlessness. But as the court already knows, we went through this rapport building and the purpose of it, and there was no objection at all when we had Agent Cotardi talking about it up there. Judge Davis was meticulous in his decision-making, citing case law, doing a 403 analysis, and he determined it was not overly prejudicial. And it's only nine minutes of a 45-minute interview, 36 minutes that were not objected to which had, and when I think what they said in their brief, they were worried about the jury seeing the demeanor, the actions, the movement of the 11-year-old on this tape. We had 36 minutes of her demeanor, her actions, of movement that were not objected to at all. And they highlighted it again after it was a played in the length of the case. Well, and also that, to the extent that is a form of prejudice, that would only work as a 401, 403 argument, right? Because from a hearsay perspective, as long as you turned the sound all the way down or scrambled her words, from a hearsay perspective, you can show those nine minutes, right? Correct, Your Honor. Yes, you absolutely can. And they also allowed, without objection, pictures of Jane Doe from when she was 11 years old, because we weren't sure if we were going to, we didn't have a preliminary hearing about whether or not we were going to show this video, and so we were, without objection, we admitted pictures of her as 11-year-old, which are on the supplemental appendix. And there was no improper bolstering. We did not ask the interviewer ever, did you believe her, do you think she was telling the truth based on your experience, anything like that. This was absolutely led in, A, first of all, appropriately under 801. And there was also other corroborating evidence. We had an entire second victim, which is not talked about in the appellant's brief at all, who was similar in age, had a mom who was romantically involved with the defendant, trusted the defendant like a father, he did a spontaneous grabbing of the genitalia and  Those girls didn't know each other at all, did not know each other of the accusations when we found the second victim. And so in terms of corroborating evidence, even outside of those nine minutes, Your Honors, I do believe any error would be harmless that we don't believe there was here. Thank you, Ms. Giussi. Thank you. Thank you, Your Honors. Judge Haydens, you indicated to me or you had asked me if I could point to a part of the joint appendix or the record where I had preserved a relevancy objection, and it would be on page 266 going into 267 where we explicitly told the court that likewise with the rapport building we think there's a relevancy issue here. And I think certainly if the government had focused more on whether or not it was or was not hearsay, then I think we likely would have doubled down significantly on that particular avenue. Can you tell me, to the extent you know, how this came up? It seems like there's some discussion and then the judge says, email me some cases and y'all send them at night, but there wasn't like argument about it. And then the next day, right before the agent goes on, there's this discussion from 261 to 267 or 8 or whatever it is. That's correct. If I recall correctly, we had raised it as an issue the prior evening and we had addressed it with the court as something that we needed to explore and would be asking the court to consider prior to Agent Cotardi's testimony, which allowed the court the opportunity for us to email some of the case law, which the court subsequently ruled upon. Specifically addressing the harmless error issue, I think there wasn't a written, I'm not saying there should have been, but there wasn't a written motion that was filed. This is all sort of part of the oral discussion.  Yes, sir. Correct. In regards to the harmless error, I think when you look at the standard for harmless error, you have to determine whether or not it would have had a significant impact or whether or not the jury would have been swayed by the introduction or the lack of introduction of that particular portion of the interview. And I think the best evidence of that is that this was at one point a hung jury and that an Allen charge had to be read for the jury and they had to go back and deliberate it. And after that Allen charge was read, they deliberated for an additional one and a half hours, according to the record, before finally returning their verdict. We have no idea why they were hung though, right? We do not. And certainly we can introduce ourselves into the jury and question why they hung or what issues they might've had. But I think that that's evidence that this was not an overwhelming case in regards to that. But that can't be right because it would seem like that would be an argument that literally any evidentiary error the district court made was not harmless. And you're not asking us to adopt that proposition. I'm not, but I'm asking the court to consider that in totality with the other evidence that there was not significant corroboration with this particular victim, Jane Doe, that there was no type of forensic evidence, digital forensic evidence, things of that nature. And so we can't say one way or the other, whether or not that video, what impact it had on the jury. It's important because when we talk about the jurors being able to judge the credibility of the witness, that's when they're on the witness stand. And that's when the defense attorneys have an opportunity to cross-examine them. And usually that's the only opportunity that the jurors get in order to observe the witness. They hear the testimony, they take notes, they go back in the jury room and they deliberate. And just to confirm, I think I've worked through the end. And the reason you have not raised any sort of Sixth Amendment challenge is because the victim testified, which means there's no Crawford problem. Correct. There is no Crawford problem. And in fact, for this particular introduction of a forensic interview, there are statutes in place at the state level, the Commonwealth of Virginia and other states as well, which allow the introduction of the forensic interview. And Crawford problems are raised in those particular cases if the child does not testify. Here the child testifies, we cross-examine. We couldn't cross-examine the video though. And the video was played after she testified. But what's important is that we don't know how many times the jury watched the video. We don't know how many times they played it, how many times they looked at that seven, nine, ten minutes of report building and saw a little girl who was talking about these types of things, serial dogs, things of that nature, and what impact it had on them when they're then looking at the rest of the video. You just said that you just noted that the victim, the video was played after the victim testified. Would you have been able to recall the victim? If something in the video was something that you wanted to explore with the victim, you presumably could have recalled the victim, right? I think the victim may have been released at that point. I would have to go back and look at the record to determine whether or not she was still on call or not. But she was only released with your consent. Correct. And certainly at that point, the ruling had not been issued in regards to whether or not the forensic interview was going to be played in its entirety, absent the portion which we've previously discussed. But counsel would not have been surprised that the forensic interview might be played or might not be played? I think we were surprised, particularly in regards to the fact that there is no provision under federal law that allows for the entirety of a forensic interview, a quote-unquote tender year's exception, to be introduced. And so certainly we would not be surprised that portions of the video may have been introduced as a prior consistent statement, but as you can tell from the case law which we presented overnight to the court and the advocacy which we had in trying to keep those portions out, it was important to us because any time a jury has an opportunity to hear the witness over and over and over again, even those portions in the beginning, particularly when you're talking about a very young girl, you just don't know what type of impact that that would have had upon them in terms of how they viewed her credibility as a witness, both when they saw her on the witness stand and the remaining of the video itself. And for those reasons, we do ask the court to find that the trial court erred and that it was not harmless.
judges: Albert Diaz, Julius N. Richardson, Toby J. Heytens